JOHN D. SHEA, ESQUIRE.
**LITCHFIELD CAVO LLP**
1800 Chapel Avenue West
Cherry Hill, New Jersey 08002
(856) 854-3636

**STITES & HARBISON PLLC**
400 W. Market Street, Suite 1800
Louisville, KY 40202
(502) 587-3400

Attorneys for Plaintiff
**V. MANE FILS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| V. MANE FILS<br><br>                    Plaintiff,<br><br>     -against-<br><br>CENTROME, INC. D/B/A ADVANCED BIOTECH<br><br>                    Defendant. | CIVIL ACTION<br><br>DOCKET NO. _____<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff, V. Mane Fils ("Mane"), a French corporation with its principal place of business at 620 route de Grasse, 06620 Le Bar-sur-Loup, France, states as follows for its complaint against Centrome, Inc. d/b/a Advanced Biotech ("ABT"), a New Jersey corporation with its principal place of business at 10 Taft Road, Totowa, NJ 07512:

**NATURE OF THE CASE**

1.      This action concerns ABT's fraudulent sale and mislabeling of a synthetic ingredient manufactured using radioactive components that it knew would be used in flavor formulations for consumer products.

2.      Though ABT certified to Mane and the public that its product was "natural," "organic," and manufactured in the United States, and sold Mane a significant amount of its product under these pretenses, independent testing and investigation revealed that ABT's product is synthetically manufactured outside of the United States using the deliberate manipulation of radioactive components.

3.      After discovering these issues with ABT's product, Mane repeatedly requested information from ABT regarding its certifications. ABT refused to answer Mane's requests.

4.      Mane seeks actual, consequential, and punitive damages resulting from ABT's breaches of warranty, fraud, and false advertising.

**PARTIES**

5.      Mane is a French corporation with its principal place of business in Bar-sur-Loup, France. It has an office in this district at 60 Demarest Drive, Wayne, New Jersey.

6.      On information and belief, ABT is a New Jersey corporation with its principal place of business at 10 Taft Road, Totowa, NJ 07512.

**JURISDICTION AND VENUE**

7.      The Court has diversity jurisdiction under 28 U.S.C. § 1332. The parties are completely diverse: Mane is a citizen of France, ABT is a citizen of New Jersey. The amount in controversy, exclusive of interests and costs, exceeds $75,000.

8.      The Court also has federal question jurisdiction to adjudicate the Lanham Act claims in this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1331. The Court has supplemental jurisdiction under 18 U.S.C. § 1367 over the state law claims.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because ABT resides in this district and a substantial part of the events giving rise to Mane's claims occurred in this district.  Further, V. Mane Fils and its United States affiliate also have previously litigated in the Trenton Vicinage of the district of New Jersey (*V. Mane Fils v. International Flavors and Fragrances, Inc.*, Civil Action No.: 3:06-cv-2304 (PGS) (DEA)) and *Givaudan Fragrances Corporation v. Mane USA*, Inc., et. al., Civil Action No.:  3:08-cv-04409 (PGS) (DEA)).

## FACTS

10.      Mane is a worldwide industry leader in the flavor and fragrance business. Mane's flavor division uses synthetic molecules and natural ingredients to produce flavors and seasoning blends, and possesses a unique expertise in designing sweet to savory products.

11.      ABT is a manufacturer and retailer of raw material ingredients for use in flavor and fragrance formulations. ABT advertises itself as "a leader in natural flavor and fragrance ingredients." (www.adv-bio.com.)

12.      During all relevant times, ABT advertised to Mane and the public the sale of 2,6-DIMETHYL PYRAZINE NATURAL. ABT's product identification for 2,6-DIMETHYL PYRAZINE NATURAL was ABT # 1497 ("Natural DMP # 1497").

*Natural DMP # 1497 Should Have the $^{14}C$ Activity Level Corresponding to the Current Environment on Earth.*

13.      Carbon (chemical symbol "C") is the building block of all life on earth.

14.     The food chain on earth begins with carbonic gas—or carbon dioxide (chemical symbol "CO2"). CO2 exists naturally in the air; it passes to plants via photosynthetic assimilation, then to animals and humans by consumption.



15.     CO2 is a chemical component (molecule) where one Carbon atom "C" is linked to two Oxygen atoms "O":

$$O = C = O$$

The Carbon "C" that is present in nature is in fact a mixture of different isotopes of the same Carbon atom, mainly:

- Isotope $^{12}C$ is the main stable isotope of Carbon C. It contains 12 protons and neutrons representing 98.9% of the total isotopes.

- Isotope $^{13}C$ the second stable isotope of Carbon. It contains 13 protons and neutrons representing 1.1% of the atmospheric Carbon C.

- Isotope $^{14}C$ the minority isotope of Carbon. It contains 14 protons and neutrons representing less than 0.1% in the atmosphere.

16.     Isotope $^{14}C$ is radioactive. All organic life, whether plant or animal, contains $^{14}C$.

17.     When exposed to radiation from the sun, $^{14}C$ decays into nitrogen-14 (14N) via beta decay. As long as the organism is alive, regardless of which rung on the food chain it occupies, it will retain a stable supply of $^{14}C$. Plants absorb $^{14}C$ levels via photosynthesis.

18.     It is well-established science that the $^{14}C$ activity of a plant is almost equal to that of atmospheric CO2 because of carbon fixation by photosynthesis.

19.     Based on this well-established science, a product that is derived from organic material, like Natural DMP, should have radiocarbon levels corresponding to the radiocarbon levels of organic plant life on earth.

***ABT Warranted and Advertised That Natural DMP # 1497 Was
Natural, Non-Synthetic, and Manufactured in the United States.***

20.     ABT certified and advertised to Mane and the public that Natural DMP # 1497 was "Natural" and not adulterated under the Federal Food, Drug, and Cosmetic Act.



21.     Throughout the events alleged in this complaint, ABT certified and advertised to Mane and the public that Natural DMP # 1497 was manufactured in the United States.

**Certification Of Origin**

Product #:        1497

Product Name:     2,6-DIMETHYL PYRAZINE NATURAL

We hereby declare that the product listed above as supplied by ADVANCED BIOTECH is manufactured in the USA.

Signed 9/12/2016,

Robert De Simone, Ph.D.
CEO, ADVANCED BIOTECH

22.     ABT also certified and advertised to Mane and the public that Natural DMP # 1497 was "non-synthetic," had "not been produced using synthetic solvents," and was "manufactured according to the IOFI Guidelines for natural substances."

## Organic Compliant Product Certificate

Product #:        1497

Product Name:     2,6-DIMETHYL PYRAZINE NATURAL

1. This is to certify that the above product made by Advanced Biotech is qualified for use in Organic Foods since it is all manufactured under criteria according to Natural Organic Program delineated by the USDA, accessible on the USDA website www.AMS.USDA.gov.

   Here, in the Act (7 U.S.C. 6502(21)), natural substance suitable for Organic Foods is defined as follows:

2. Nonsynthetic (Natural) - A substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. 6502 (21). For purposes of this Act non-synthetic is used as a synonym for natural as the term is used in the Act.
   A. No Preservatives are used.
   B. Products have not been irradiated or sterilized or sterilized by gas.
   C. Products are guaranteed to be free of sewage and sludge.
   D. Products contain only the raw material mentioned.
   E. The specified raw material or the used processing aids, do not contain protein or DNA resulting from genetic modification (GMO).
   F. There are no additives and all solvents and carriers employed in the product are limited to the following natural solvents: ethanol, essential oils, water, vegetable oil, glycerol or $CO_2$. The glycerin used in Advanced Biotech natural products is produced by the steam cracking of botanical-based vegetable oils with subsequent purification by distillation.
   G. The flavor is non-synthetic.
   H. The flavor has not been produced using synthetic solvents and carrier systems or any artificial preservatives.
   I. Meets the natural flavor definition as defined on the Natural List of Allowed and Prohibited Substances (7 CFR 205.605).
3. The products are produced solely from Botanical, NON-GMO sources.
   A. The products comply to the regulations concerning maximum pesticide residues (RHmV).

B. The products are manufactured according to the IOFI Guidelines for natural substances (Code of Practice Annex).

C. The Products Comply with the Flavour Directive 1334/2008 and can be declared as natural according to article 3(2)(c) or (d) and (k).

Accordingly, all Naturals sold by Advanced Biotech conform to the FDA definition for a natural flavoring 21 CFR 101.22(a)(3) and thus conforms to the guidelines outlined above in the Act (7 U.S.C. 6502(21)).

Signed 9/12/2016,

Robert De Simone, Ph.D.
CEO, ADVANCED BIOTECH

23.     ABT also certified and advertised to Mane and the public that Natural DMP # 1497 was "natural" and could be labeled according to articles 3(2) (c) and (k) of Regulation (EU) No 1334/2008[1] regarding natural flavoring substances and flavor preparations.

**EU Natural Certification**

We confirm that the product:

Product #:      1497

Product Name:   2,6-DIMETHYL PYRAZINE NATURAL

The Product can be labeled according to articles 3(2) (c) and (k) of Regulation (EU) No 1334/2008[1] regarding natural flavoring substances and flavor preparations.

Additionally this product is being produced according to the EFFA guidance document of 19-02-2009.

Metal Catalysis or inorganic substances are not used during the manufacturing process.

This product does not contain raw materials of animal source nor have raw material of animal source been used to manufacture this product.

This product has not been manufactured from or with help of moulds and or genetically modified botanicals as per 2001/18/EU. As a consequence the product needs not to be labeled according to 1829/2003/EU and 1830/2003/EU.

The Product is of food grade Quality.

24.     ABT also certified and advertised to Mane and the public that Natural DMP # 1497 was produced according to the EFFA guidance document of 19-02-2009.

25.     ABT also certified and advertised to Mane and the public that Metal Catalysis or inorganic substances are not used during the manufacturing process.

26.     A copy of ABT's complete certifications regarding Natural DMP # 1497 is attached as Exhibit A.

### Mane Relied on ABT's Representations for Five Years.

27.     In reliance on ABT's certifications, Mane purchased approximately 700 kilograms of Natural DMP # 1497 from ABT over the course of five years. The purchases were made on the following dates: June 11, 2012; November 20, 2012; March 5, 2013; April 9, 2013; May 28, 2013; July 19, 2013; August 29, 2013; November 29, 2013; December 4, 2013; December 12, 2013; February 17, 2014; May 16, 2014; October 7, 2014; April 3, 2015; May 7, 2015; July 1, 2015; November 17, 2015; and February 1, 2016.

28.     Mane also relied on the certifications and assurances from ABT when it incorporated Natural DMP # 1497 into its products and represented to its customers that its product was natural and not synthetic.

### Independent Testing Revealed That ABT's Natural DMP # 1497 Was Not Manufactured with a Natural Process.

29.     In February 2016, as part of its quality control testing protocols, Mane sent a sample of an ABT shipment of Natural DMP #1497 from the February 1, 2016, purchase to a third party laboratory, the Center for Applied Isotope Studies at the University of Georgia.

30.     On April 1, 2016, the Center for Applied Isotope Studies at the University of Georgia advised Mane that the ABT sample contained high levels of radioactive material.

31.     A product that is "Natural DMP" should have a radiocarbon level of $^{14}C$ reflecting the radiocarbon levels of organic plant life on earth.

32.     The Center for Applied Isotope Studies at the University of Georgia found that ABT's Lot # 100192840 had $^{14}C$ activity that was more than 150% of the radiocarbon level in atmospheric CO2.

33.     The University of Georgia concluded: "this indicates the addition or dilution with $^{14}$C level material to this sample."

34.     The University of Georgia confirmed this high level of $^{14}$C activity by duplicate analysis.

35.     These test results indicate that the "Natural DMP" supplied by ABT was manufactured synthetically with the addition of $^{14}$C level material.

36.     Based on these test results, and upon information and belief, ABT has been selling as "Natural DMP" a material that is in fact synthetically manufactured with the deliberate addition or dilution of $^{14}$C level material. Based on these test results, and information and belief, ABT and/or suppliers acting in concert have been deliberately adding or manipulating $^{14}$C level material in the manufacturing process for the purpose of making the "Natural DMP" appear as if it has a radiocarbon level corresponding to organic matter. ABT's Lot # 100192840 appears to have resulted from an error in that synthetic manufacturing processes whereby ABT or its suppliers excessively manipulated the radiocarbon level. The error, however, exposed that ABT's certifications for this product (attached as Exhibit A) were false.

### ABT Has Refused To Answer Mane's Questions Concerning the Test Result, and Has Removed the Certifications from Its Website.

37.     Upon receiving this alarming test result, Mane immediately contacted ABT seeking an explanation—but ABT could not explain the result.

38.     Mane repeatedly has asked ABT to explain how its shipment of "Natural DMP" could have a $^{14}$C level nearly double that of natural organic material.

39.     In October 2016, Mane's counsel sent the President of ABT, Augustine Isernia, a letter asking ABT if any of the certifications concerning Natural DMP # 1497 were inaccurate. ABT refused to answer that question.

40.     ABT has failed to answer any of Mane's questions concerning ABT's certifications, from the October 2016 letter or otherwise.

41.     Sometime after being confronted by Mane, ABT removed its certifications for Natural DMP # 1497 from its website.

42.     On information and belief, ABT has known that its certifications for Natural DMP # 1497 were inaccurate for at least four years.

### ABT Also Misrepresented That Its Product Was Manufactured in the United States.

43.     On information and belief, ABT made false and misleading statements concerning where Natural DMP # 1497 was manufactured.

44.     On information and belief, ABT has been purchasing synthetic DMP from supplier(s) in China, importing that material into New Jersey, and selling the modified synthetic DMP as Natural DMP # 1497.

45.     Upon information and belief, ABT improperly attempted to entice customers to purchase Natural DMP # 1497 by claiming it was manufactured in the United States.

### ABT's Actions Have Caused Mane Significant Harm.

46.     Synthetic DMP is significantly cheaper than Natural DMP.

47.     DMP that is manufactured in China is significantly cheaper than DMP that is manufactured in the United States.

48.     On information and belief, ABT has grossly overcharged Mane for Natural DMP # 1497 because it has charged for a natural product manufactured in the United States

but provided a synthetic product manufactured in China after it has manipulated the radiocarbon level to make the material appear natural.

49.     ABT's misrepresentations have harmed—and will continue to harm—Mane significantly in other ways. For instance, ABT's false statements have caused significant disruption in Mane's operations, and Mane has been required to conduct additional sourcing of Natural DMP # 1497.

50.     ABT's false certifications also have proximately caused and will continue to cause injury to Mane's commercial interests in sales and business reputation.

CAUSES OF ACTION

51.     Mane incorporates by reference and re-alleges as if fully set forth herein the above paragraphs for each of the following cases of action.

<strong>Count 1—Breach of Express Warranty ("Natural")<br>(N.J.S.A. § 12A:2-313)</strong>

52.     On its website, ABT expressly warranted that Natural DMP # 1497 was:

(a)     Natural and not adulterated under the Federal Food, Drug, and Cosmetic Act;

(b)     "Non-synthetic," that it had "not been produced using synthetic solvents," and that it was "manufactured according to the IOFI Guidelines for natural substances";

(c)     "Natural" and could be labeled according to articles 3(2) (c) and (k) of Regulation (EU) No 1334/2008; and

(d)     Certified and produced according to the EFFA guideline document of 17-02-2009.

53.     ABT also expressly warranted that metal catalysis or inorganic substances were not used during the process of manufacturing Natural DMP # 1497.

54.     These warranties formed the basis of ABT's bargain with Mane because Mane would not have purchased Natural DMP # 1497 from ABT without them.

55.     ABT breached these express warranties when it sold Mane an unnatural, inorganic, adulterated, and synthetic product using radioactive components.

56.     Mane notified ABT of the breach as soon as Mane discovered it, but ABT has refused to provide an adequate cure.

57.     As a direct and proximate result of ABT's breach, Mane has suffered significant harm, including incidental and consequential damages.

**Count 2—Breach of Express Warranty (Country of Origin)**
**(N.J.S.A. § 12A:2-313)**

58.     On its website, ABT expressly warranted that Natural DMP # 1497 was manufactured in the United States.

59.     This warranty formed the basis of ABT's bargain with Mane because Mane would not have purchased Natural DMP # 1497 from ABT without it.

60.     ABT breached this express warranty when it sold Mane a product that, on information and belief, was manufactured in China.

61.     Mane notified ABT of the breach as soon as Mane discovered it, but ABT has refused to provide an adequate cure.

62.     As a direct and proximate result of ABT's breach, Mane has suffered significant harm, including incidental and consequential damages.

**Count 3—Breach of Implied Warranty of Merchantability**
**(N.J.S.A. § 12A:2-314)**

63.     ABT is a merchant for purposes of its sales to Mane because it deals in goods of the kind and also holds itself out as having knowledge and skill peculiar to the goods involved in the transactions involving Natural DMP # 1497.

64.     At the times ABT sold Natural DMP # 1497 to Mane, Natural DMP # 1497 was not merchantable. Though ABT represented that Natural DMP # 1497 was natural, organic, and manufactured in the United States—and knew that Mane intended to sell the product to its customers as such—the product ABT delivered on several occasions was unnatural, inorganic, and manufactured in China. In other words, the product ABT sold Mane was completely unfit for the purpose for which it was used.

65.     Mane notified ABT of the breach as soon as Mane discovered it, but ABT has refused to provide an adequate cure.

66.     As a direct and proximate result of ABT's breach, Mane has suffered significant harm, including incidental and consequential damages.

**Count 4—Breach of Implied Warranty of Fitness for a Particular Purpose
(N.J.S.A. § 12A:2-314)**

67.     ABT had reason to know that Mane intended to use Natural DMP # 1497 for a particular purpose: producing natural and organic flavors and fragrances that were made in the United States for its customers.

68.     Mane relied on ABT's skill and judgment to select and furnish suitable goods for this purpose: Mane relied on ABT's skill and judgment to provide a natural, organic product that was manufactured in the United States.

69.     ABT breached the implied warranty of fitness for a particular purpose when it selected and furnished goods for Mane that were unnatural, inorganic, and manufactured in China.

70.     Mane notified ABT when it learned of the breach, and ABT failed to provide a suitable cure.

71.     As a direct and proximate result of ABT's breach, Mane has suffered significant harm, including incidental and consequential damages.

### Count 5—Common Law Fraud ("Natural")

72.     On its website, ABT misrepresented that Natural DMP # 1497 was:

    (a)     Natural and not adulterated under the Federal Food, Drug, and Cosmetic Act;

    (b)     "Non-synthetic," that it had "not been produced using synthetic solvents," and that it was "manufactured according to the IOFI Guidelines for natural substances";

    (c)     "Natural" and could be labeled according to articles 3(2) (c) and (k) of Regulation (EU) No 1334/2008; and

    (d)     Certified and produced according to the EFFA guideline document of 17-02-2009.

73.     ABT also misrepresented that metal catalysis or inorganic substances were not used during the process of manufacturing Natural DMP # 1497.

74.     These misrepresentations were material to Mane's decision to purchase Natural DMP # 1497.

75.     On information and belief, ABT knew these representations were false.

76.     On information and belief, ABT made these misrepresentations with the intent to induce Mane's reliance by purchasing the Natural DMP # 1497.

77.     Mane reasonably relied on these misrepresentations: it has purchased approximately 700 kilograms of Natural DMP # 1497 since June 11, 2012. Had Mane known that Natural DMP # 1497 was unnatural, non-organic, synthetic, and manufactured using radioactive components, it would not have made these purchases.

78.     As a direct and proximate result of ABT's fraud, Mane has suffered significant harm. For instance, it has grossly overpaid for Natural DMP # 1497, and it has been forced to conduct additional sourcing of Natural DMP # 1497.

### Count 6—Common Law Fraud (Country of Origin)

79.     On its website, ABT misrepresented that Natural DMP # 1497 was manufactured in the United States.

80.     On information in belief, the product was in fact manufactured in China.

81.     This misrepresentation was material to Mane's decision to purchase Natural DMP # 1497.

82.     On information and belief, ABT knew this representation was false.

83.     On information and belief, ABT made this misrepresentation with the intent to induce Mane's reliance by purchasing the Natural DMP # 1497.

84.     Mane reasonably relied on this misrepresentation: it has purchased approximately 700 kilograms of Natural DMP # 1497 since June 11, 2012. Had Mane known that Natural DMP # 1497 was manufactured in China, it would not have made these purchases.

85.     As a direct and proximate result of ABT's fraud, Mane has suffered significant harm.

### Count 7—False Advertising ("Natural")
### (15 U.S.C. § 1125(a))

86.     Through its website, ABT has made and distributed in interstate commerce and in this District advertisements that contain false and misleading material statements of fact regarding Natural DMP # 1497, including that it was:

- 15 -

(a)     Natural and not adulterated under the Federal Food, Drug, and Cosmetic Act;

(b)     "Non-synthetic," that it had "not been produced using synthetic solvents," and that it was "manufactured according to the IOFI Guidelines for natural substances";

(c)     "Natural" and could be labeled according to articles 3(2) (c) and (k) of Regulation (EU) No 1334/2008; and

(d)     Certified and produced according to the EFFA guideline document of 17-02-2009.

87.     ABT also misrepresented on its website that metal catalysis or inorganic substances were not used during the process of manufacturing Natural DMP # 1497.

88.     In reality, Natural DMP # 1497 is not natural (under the FDCA or the EU regulations), is synthetic, and is manufactured using radioactive components.

89.     These misrepresentations actually deceived Mane and have a tendency to deceive a substantial portion of ABT's customers and intended customers.

90.     These misrepresentations are material because they are likely to influence purchasing decisions, and in fact did influence Mane's purchasing decisions.

91.     ABT's false and misleading advertising statements injure Mane and consumers. For example, as a result of ABT's misstatements, Mane stands to suffer significant commercial injury in the form of harm to its sales, business reputation, and its relationships with customers.

92.     ABT's false and misleading advertising statements violate Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

93.     Under 15 U.S.C. § 1117, Mane is entitled to recover from ABT the damages sustained by Mane as a result of ABT's acts in violation of 15 U.S.C. § 1125(a).

94.     Also under 15 U.S.C. § 1117, Mane is entitled to recover from ABT the gains, profits, and advantages that ABT has obtained as a result of ABT's acts in violation of 15 U.S.C. § 1125(a).

95.     Also under 15 U.S.C. § 1117, Mane is entitled to recover the costs of this action. On information and belief, ABT acted willfully and with the intention of causing confusion, mistake, or deception, so Mane is entitled to recover its reasonable attorney's fees in prosecuting this action.

96.     As a result of ABT's deceptive acts, Mane has suffered a commercial injury in the form of harm to its sales, business reputation, and its relationships with customers.

### Count 8—False Advertising (Country of Origin)
### (15 U.S.C. § 1125(a))

97.     Through its website, ABT has made and distributed in interstate commerce and in this District advertisements that contain false and misleading material statements of fact regarding Natural DMP # 1497, including that it was manufactured in the United States.

98.     In reality, on information and belief, Natural DMP # 1497 is manufactured in China.

99.     This misrepresentation actually deceived Mane and has a tendency to deceive a substantial portion of ABT's customers and intended customers.

100.     ABT's false and misleading advertising statement injures Mane and consumers. For example, as a result of ABT's misstatement, Mane stands to suffer significant commercial injury in the form of harm to its sales, business reputation, and its relationships with customers.

101.    ABT's false and misleading advertising statement violates Section 43(a) of the

Lanham Act, 15 U.S.C. 1125(a).

102.    Under 15 U.S.C. § 1117, Mane is entitled to recover from ABT the damages

sustained by Mane as a result of ABT's acts in violation of 15 U.S.C. § 1125(a).

103.    Also under 15 U.S.C. § 1117, Mane is entitled to recover from ABT the gains,

profits, and advantages that ABT has obtained as a result of ABT's acts in violation of 15

U.S.C. § 1125(a).

104.    Also under 15 U.S.C. § 1117, Mane is entitled to recover the costs of this

action. On information and belief, ABT acted willfully and with the intention of causing

confusion, mistake, or deception, so Mane is entitled to recover its reasonable attorney's

fees in prosecuting this action.

### Count 9—False Advertising ("Natural")
### (N.J.S.A. 56:4-1, Common Law Unfair Competition)

105.    On its website, ABT has made several false and misleading statements about

Natural DMP # 1497, including that it was:

> (a)    Natural and not adulterated under the Federal Food, Drug, and
>        Cosmetic Act;
>
> (b)    "Non-synthetic," that it had "not been produced using synthetic
>        solvents," and that it was "manufactured according to the IOFI
>        Guidelines for natural substances";
>
> (c)    "Natural" and could be labeled according to articles 3(2) (c) and (k) of
>        Regulation (EU) No 1334/2008; and
>
> (d)    Certified and produced according to the EFFA guideline document of
>        17-02-2009.

106.    ABT also misrepresented on its website that metal catalysis or inorganic

substances were not used during the process of manufacturing Natural DMP # 1497.

- 18 -

107.     In reality, Natural DMP # 1497 is not natural (under the FDCA or the EU regulations), is synthetic, and is manufactured using radioactive components.

108.     These representations actually deceived Mane and have a tendency to deceive a substantial portion of ABT's customers and intended customers.

109.     The deception is material because it is likely to influence purchasing decisions, and in fact did influence Mane's purchasing decisions.

110.     ABT's false and misleading advertising statements injure Mane and consumers. For example, as a result of ABT's misstatements, Mane stands to suffer significant commercial injury in the form of harm to its sales, business reputation, and its relationships with customers.

**Count 10—False Advertising (Country of Origin)**
**(N.J.S.A. § 56:4-1, Common Law Unfair Competition)**

111.     On its website, ABT advertises that Natural DMP # 1497 is manufactured in the United States.

112.     On information and belief, Natural DMP # 1497 is manufactured in China.

113.     This misrepresentation actually deceived Mane and has a tendency to deceive a substantial portion of ABT's customers and intended customers.

114.     This deception is material because it is likely to influence purchasing decisions, and in fact did influence Mane's purchasing decisions.

115.     ABT's false and misleading advertising statement injures Mane and consumers. For example, as a result of ABT's misstatements, Mane stands to suffer significant commercial injury in the form of harm to its sales, business reputation, and its relationships with customers.

**PRAYER FOR RELIEF**

Wherefore, Mane respectfully requests:

     (a)    Judgment in its favor;

     (b)    All damages that may be proven at trial;

     (c)    An award of prejudgment interest on all liquidated sums;

     (d)    Incidental damages;

     (e)    Consequential damages;

     (f)    Indemnification for any third party claims Mane faces as a result of ABT's misconduct;

     (g)    Attorney's fees and costs;

     (h)    Maximum damages available under the Lanham Act, including an award of ABT's gains, profits, and advantages obtained as a consequence of its false advertising, and treble damages;

     (i)    Punitive damages; and

     (j)    All other appropriate relief to which it is entitled.

**JURY TRIAL DEMANDED**

Plaintiff V. Mane Fils demands a trial by jury on all issues so triable.

**LOCAL CIVIL RULE 11.2 CERTIFICATION**

I hereby certify that this matter in controversy is not the subject of any other action pending in any court, arbitration, or administrative proceeding.

Dated: March 22, 2017         *s/  John D. Shea*

         John D. Shea, Esquire
         LITCHFIELD CAVO LLP
         1800 Chapel Avenue West
         Cherry Hill, New Jersey 08002
         Tel:  (856) 854-3636
         Email:  shea@litchfieldcavo.com

         Thad M. Barnes (*pro hac vice forthcoming*)
         David B. Owsley II (*pro hac vice forthcoming*)
         Jeffrey S. Moad (*pro hac vice forthcoming*)
         STITES & HARBISON PLLC
         400 West Market Street, Suite 1800
         Louisville, Kentucky  40202-3352
         Tel:  (502) 587-3400
         Email:   tbarnes@stites.com
                     dowsley@stites.com
                     jmoad@stites.com

         *Counsel for Plaintiff V. Mane Fils*

- 21 -